# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| U.S. CONTINENTAL MARKETING, INC., a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>SGS NORTH AMERICA, INC., a Delaware Corporation, and Does 1-10 inclusive<br><br>Defendants. | Civil Action No.: 1:23-cv-0517<br><br>**COMPLAINT FOR:**<br><br>(1) **VIOLATION OF THE DEFEND TRADE SECRETS ACT;**<br>(2) **VIOLATION OF CALIFORNIA UNIFORM TRADE SECRET ACT**<br><br>**DEMAND FOR JURY TRIAL** |

NOW COMES, Plaintiff U.S. CONTINENTAL MARKETING, INC. ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Defendant SGS NORTH AMERICA, INC. ("Defendant"), and Does 1-10, Inclusive, individually and/or severally, and state as follows on information and belief:

## PRELIMINARY STATEMENT

1. This lawsuit arises from Defendant's unlawful disclosure of Plaintiff's proprietary and trade secret information in violation of California and Federal law, and a June 12, 2023 Confidential Disclosure Agreement ("NDA") between Plaintiff and Defendant.

2. In August 2023, Defendant unlawfully disclosed Plaintiff's proprietary and trade secret information to Plaintiff's customer - an unauthorized person.

3. Unless Plaintiff is granted the relief prayed for herein, including injunctive relief, Plaintiff will be irreparably harmed by Defendant's continued possession of Plaintiff's proprietary and trade secret information which Defendant admits has been wrongfully disclosed and which Defendant still retains.

1

## JURISDICTION, VENUE AND CHOICE OF LAW

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under the laws of the United States.

5. This Complaint arises out of Defendant's violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b).

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the Plaintiff and Defendant are residents of different states.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391 since a substantial part of the events giving rise to this action occurred within this District.

8. Plaintiff and Defendant entered into a Confidential Disclosure Agreement dated July 3, 2023 ("NDA"), a true and correct copy is attached hereto as Exhibit A. Section 7 of the NDA provides that all disputes shall be governed by California law, and that all litigation related to the NDA shall be filed in New Hampshire: "This Agreement shall be construed for all purposes in accordance with the laws of the State of California, USA without regard to the conflict of laws provisions thereof. All litigation arising under or relating to this Agreement shall be filed and prosecuted in any court of competent subject matter jurisdiction in New Hampshire, and the parties consent to the jurisdiction of such courts over them for such purpose."

## THE PARTIES

9. Plaintiff is and was at all relevant times mentioned herein, a corporation formed under the laws of the State of California, with its principal place of business in the City of Corona, Riverside County, State of California.

10. Defendant SGS North America, Inc. is and was at all relevant times mentioned herein, a corporation formed under the laws of the State of Delaware, with its principal place of business at 201 Route 17 North, City of Rutherford, Bergen County, New Jersey 07070.

11. Plaintiff is ignorant of the true names and capacities of the defendants sued as Does

1 through 10, inclusive, and therefore sues these Doe defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon allege, that each of the named and fictitious defendants are, and at all times relevant herein was, an agent, alter ego, employee, partner and/or joint venturer of each of the other, acting within the course and scope of such agency, employment, partnership or joint venture.

## FACTUAL ALLEGATIONS

12. Since 1991, Plaintiff has been and continues to be a premier developer of commercial packaging and private label care products in several industries, including textiles. Plaintiff offers a full range of product development services and manufacturing options. Companies from all over the world hire Plaintiff to develop proprietary chemical formulations that enhance their products durability, water-resistance, insulative properties, and luxurious softness. Those formulations are highly confidential and propriety to Plaintiff, are owned by Plaintiff, and are not shared or disclosed to the customer. There are times when the chemical formulations require approval by federal regulators before they can be applied to products sold to consumers.

13. Once the customer is satisfied with the proprietary chemical formulation, Plaintiff then uses the formulation to manufacture the goods for the customer. Those manufacturing contracts result in tens of millions of dollars of revenue for Plaintiff which allows Plaintiff to recoup its substantial investment in the research and development of the chemical formulations.

14. Plaintiff's 100,000 square foot factory located in Corona, California is the largest private label leather and fabric care company in the world.

15. The chemical formulations that Plaintiff develops are unique for each customer's specific needs. All formulations are designed and engineered by Plaintiff's employees. The steps, methods and processes underlying each formulation are confidential and have independent economic value.

16. The formulations developed by Plaintiff are highly sensitive and propriety information. The formulations are rooted in scientific, technical, engineering information,

including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures.

17. Plaintiff has taken great lengths to ensure that its formulations remain confidential. All employees who work on or have access to the formulations have agreed in writing to keep such information confidential and not disclose it to any third person. Plaintiff requires that any third party, such as Defendant herein, sign a confidentiality agreement that prohibits disclosure to any person without the prior express written consent of Plaintiff. The formulations are keep and maintained by Plaintiff on a secure encrypted database that can only be accessed by person(s) on a need-to-know basis who are granted credentials (i.e., username and password) by Plaintiff's network administrator. When such person(s) cease to be employed by Plaintiff his/her credentials are immediately revoked.

18. Plaintiff has not, and does not, disclose the formulations to its customers. In fact, Plaintiff's customers, including the customer at issue in this lawsuit, agree writing to not even attempt to reverse engineer the formulations.

19. The formulations, including the formulations at issue in this lawsuit, often take years to research and develop, at a cost to Plaintiff of millions of dollars. As it relates to the formulations at issue in this lawsuit, Plaintiff spent nearly two years and $2,000,000 to research and develop the formulations. Thus, the formulation derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. The formulations are highly valuable to a customer and/or competitor because, among other reasons, it would allow either to significantly shorten the research and development time and expense to get the formulation to market.

20. In 2021, Plaintiff's customer contracted with Plaintiff to develop unique chemical formulations for use on its textiles. Thereafter, Plaintiff spent nearly two years and $2,000,000 to research and develop those formulations. That process adhered to Plaintiff's custom and practice of ensuring the formulations were kept and maintained in secrecy consistent with the history in

paragraphs 16-18.

21. In early 2023, Plaintiff's customer stated that it wanted the formulations tested by an independent laboratory who would then prepare reports confirming the chemical formulations were safe for use on products sold to the public. While Plaintiff recommended several reputable laboratories to perform the independent testing, the customer insisted the formulations be tested by Defendant whom the customer had worked with before on other projects.

22. Thereafter, Plaintiff contacted Defendant who claimed to be a reputable independent laboratory who routinely inspected, verified, tested and certified the safety of chemical formulations for use on consumer goods.

23. Over the course of the next several months, Plaintiff and Defendant had extensive discussions about the reasons and absolute need to keep the proprietary formulations confidential and that such information could *never* be disclosed to the customer or any third party. Defendant agreed. Further, Defendant agreed the testing results would be documented in a detailed report sent only to Plaintiff that contained, among other things, the proprietary information and chemical formulation tested. Defendant further agreed that it would send a redacted version of the testing results to the customer that omitted the proprietary information and chemical formulation tested.

24. Thereafter, Plaintiff and Defendant discussed and negotiated the terms of the Confidential Disclosure Agreement entered into on July 3, 2023 ("NDA") that expressly prohibited Defendant from disclosing Plaintiff's proprietary information and chemical formulations to Plaintiff's customer.

25. The NDA broadly defined "Confidential Information" so that it includes all information that Plaintiff would turnover to Defendant related to the testing. In particular, Section 1.1 provides as follows:

> "1.1. 'Confidential Information' includes: (a) all information proprietary or confidential to the disclosing party (whether or not reduced to writing or other tangible medium of expression, and whether or not patented, patentable, capable of trade secret protection or protected as an unpublished or published work under the United States Copyright Act of 1976, as amended); (b) information relating to the Intellectual Property and Business Practices of the disclosing party; and ( c) comparable information that the disclosing party may receive or has received

5

from others who do business with it; and ( d) the fact that the parties are engaged in discussions or a business relationship. Notwithstanding the foregoing, Confidential Information does not include information which: (i) was already known to the receiving party prior to its contact with the disclosing party (as established by the receiving party's records); (ii) is or becomes generally available to the public other than through a breach of this Agreement; (iii) is at any time furnished to the receiving party by a third party who is lawfully in possession of such information and who lawfully conveys such information; or (iv) is independently developed by the receiving party without the use of or reliance upon the Confidential Information of the disclosing party. [Underline added]"

26. The terms "Intellectual Property" and "Business Practices" as used in Section 1.1 were defined as follows:

"1.2. 'Intellectual Property' includes research and development, inventions, discoveries, developments, improvements, methods and processes, know-how, drawings, patterns, blueprints, specifications, designs, ideas, prototypes, models, samples, molds, lasts, product briefs, algorithms, computer programs and software, compositions, works, concepts, patents, copyrights, trademarks, trade names, trade secrets, formulae, writings, notes and patent, trademark and copyright applications."

"1.3 'Business Practices' includes business plans, financial information, products, services, manufacturing processes and methods, costs, sources of supply, advertising and marketing plans, customer lists, sales, profits, pricing methods, personnel and business relationships."

27. The NDA also confirmed Defendant would take reasonable and diligent steps to ensure that the Confidential Information it received from Plaintiff would remain secret and not disclosed to anyone outside of Defendant unless first agreed to by Plaintiff in writing. In that regard, Section 2 provides as follows:

"2.     Disclosure. Each of Company and Supplier, on behalf of itself and its employees and agents, agrees that, during the period of its discussions and/or business relationship with the other party and for so long thereafter as any information received by it remains Confidential Information: (a) it shall not at any time disclose to any person, or use for its own benefit or the benefit of any third party, such Confidential Information without the prior written consent of the disclosing party, and (b) it shall disclose such Confidential Information only to those of its employees and financial and legal advisors who: (i) have a need to know such Confidential Information in the performance of their duties associated with the business discussions or any resulting business relationship and (ii) are bound by written confidentiality obligations, at least as stringent as those contained herein, to maintain such Confidential Information in confidence. The receiving party shall maintain at least the same degree of diligence in the protection of the Confidential Information as it uses with regard to its own proprietary information."

28. The NDA further confirmed Defendant would not, unless first agreed by

6

Plaintiff in writing, disclose any of the Confidential Information to any third person, such as Plaintiff's customer. In that regard, Section 3 provides as follows:

> "3.     Third Party Disclosure; Copies Prohibited. Without limiting the disclosure restrictions set forth in Section 2 above, each party agrees that, prior to disclosure of any Confidential Information received by it from the other party, such first party shall obtain from all third parties receiving such Confidential Information a written agreement: (a) to hold such Confidential Information in confidence and not to use such Confidential Information for any purpose except as it relates to discussions between the parties hereto; and (b) to return such Confidential Information to such first party immediately after such third party has completed its work with respect thereto or at such earlier time as may be requested by such other party hereto. Each party agrees that, without the prior written consent of the other party, it shall not disclose to any third party, whether for purposes of marketing, endorsements, soliciting business or otherwise, that it is engaged in business discussions or negotiating a business relationship with the other party, nor shall such first party so disclose any of the terms of its potential or actual business arrangements with the other party. Notwithstanding the foregoing or the disclosure restrictions set forth in Section 2, each party shall be permitted to disclose the Confidential Information to the extent that its legal or accounting advisors state that such disclosure is necessary to comply with law, regulation, executive or judicial order, or other legal requirement, provided, however, that the party making such required disclosure shall advise the other party as promptly as reasonably possible under the circumstances of the intended disclosure and provide reasonable cooperation in any effort by the other party to obtain a protective order or other similar relief."

29.     Section 4 of the NDA requires Defendant to return to Plaintiff all proprietary information at the end of the business relationship:

> "4.     Return of Confidential Information. Each party agrees, upon termination of the discussions or business relationship between the parties or upon the written request of the disclosing party, (i) to deliver promptly to such other party any documents and other tangible materials reflecting Confidential Information of such other party and any copies thereof which the party receiving such Confidential Information and its employees and financial and legal advisors have in its/their possession or under its/their control at such time, and (ii) to destroy any electronic files or data reflecting Confidential Information of the disclosing party that said receiving party and its employees and financial and legal advisors have in its/their possession or under its/their control at such time, and certify said complete return and/or destruction to the disclosing party in writing. Notwithstanding the foregoing, the receiving party may retain one copy of Confidential Information solely for regulatory and/or record keeping purposes."

30.     Section 7 of the NDA states in the event of a breach that injunctive relief is an available remedy: "The parties agree that, if there is a breach of this Agreement by either party, the other party shall have remedies at law and in equity, including, but not limited to, appropriate

injunctive relief or specific performance."

31.     On July 20, 2023, and pursuant to the terms of the NDA, Plaintiff sent Defendant five (5) propriety chemical formulations for testing. Thereafter, those five formulas were tested by Defendant per the customer's request. Defendant then prepared a detailed report that included not only the test findings, but also the proprietary chemical formulas and other Confidential Information as defined in the NDA. On August 10, 2023 Defendant sent that detailed unredacted detailed report directly to the customer without any prior notice to Plaintiff or consent by Plaintiff. That disclosure was a violation of the NDA. If Defendant had requested consent to disclose such information to the customer, Plaintiff would have refused permission for the reasons set forth above.

32.     On August 15, 2023, and pursuant to the terms of the NDA, Plaintiff sent to Defendant one (1) additional propriety chemical formula for testing. Thereafter, the formula was tested by Defendant per the customer's request. Defendant then prepared a detailed report that included not only the test findings, but also the proprietary chemical formula and other Confidential Information as defined in the NDA. On August 28, 2023 Defendant sent that detailed unredacted detailed report directly to the customer without any prior notice to Plaintiff or consent by Plaintiff. That disclosure was a violation of the NDA. If Defendant had requested consent to disclose such information to the customer, Plaintiff would have refused permission for the reasons set forth above.

33.     On or about September 11, 2023 Plaintiff learned information that Defendant may have sent the August 10, 2023 detailed testing report directly to the customer, rather than the redacted versions as the parties had agreed.

34.     On September 12, 2023, Plaintiff approached Amol Dev - Vice President, Cosmetics & Hygiene for Defendant about the potential breach of the NDA, during which Mr. Dev confirmed Plaintiff's proprietary formulations were Confidential Information under the NDA and that Defendant wrongfully sent, on August 10, 2023, detailed testing reports containing those formulations directly to the customer. Mr. Dev also disclosed that in addition to

the August 10, 2023 breach, that he believed Defendant also committed a second violation of the NDA by sending a second detailed report to the customer on August 28, 2023 that included the proprietary formulation sent by Plaintiff on August 15, 2023.  Mr. Dev claimed the disclosures were the result of an error and, even though it was a clear violation of the NDA, he did not think it was important to let Plaintiff know what happened.  Mr. Dev informed Plaintiff that the unlawful disclosure occurred because Defendant failed to create and implement reasonable safeguards and processes to ensure the Confidential Information was not wrongfully sent to the customer.  Mr. Dev tried to assure Plaintiff that Defendant would try to be more careful in the future.

35. Defendant still has Plaintiff's Confidential Information and has not returned it to Plaintiff.  As a result of the unlawful disclosures, Plaintiff's investment in the formulations is at risk as is its business relationship with its customer who now has access to all of the information it needs to manufacture the products with the proprietary formulas thereby causing Plaintiff to never recoup its $2,000,000.00 research and development costs nor the estimated $20,000,000 in profits from its manufacturing agreement with the customer, and the risk remains that Defendant will make further unlawful disclosures Plaintiff's Confidential Information that will harm Plaintiff's business and competitive interests.

### FIRST COUNT AND CLAIM FOR RELIEF

**(Trade Secrets Misappropriation Against All Defendants and Does 1-10
in Violation of DTSA)**

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1-35 of this Complaint as though fully set forth herein.

37. At all times relevant to this Complaint, Plaintiff owned the non-public proprietary chemical formulations (hereinafter "Trade Secret Information") including, but not limited to the formulations described above.

38. Plaintiff has invested significant time and expense in developing this Trade Secret Information. The Trade Secret Information are highly valuable to a customer and/or competitor because, among other reasons, it would allow either to significantly shorten the research and

development time and expense to get the formulas to market.

39. The Trade Secret Information is and was a trade secret belonging to Plaintiff at all relevant times.

40. At all times relevant to this Complaint, Plaintiff employed reasonable measures to maintain the secrecy and security of its Trade Secret Information.

41. Defendant willfully and maliciously misappropriated, used and/or disclosed in an improper manner Plaintiff's Trade Secret Information in furtherance of its efforts to share that information with its long-time client – who was also Plaintiff's customer, and not returning the original and copies of Trade Secret Information.

42. Defendant was fully aware that Plaintiff did not authorize or consent to disclosure of their Trade Secret Information to the customer.

43. Defendant was fully aware that Plaintiff did not authorize or consent to Defendant retaining the Trade Secret Information.

44. Defendant's actions constitute a willful and malicious violation of the Defendant Trade Secret Act ("DTSA"), 18 U.S.C. § 1839, *et seq*.

45. Defendant's actions are in violation of its duties to Plaintiff and have caused and will cause irreparable harm to Plaintiff for which there is no adequate monetary compensation.

46. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm, including the risk of further disclosures of the Trade Secret Information, loss of business and contractual relationships, diminished value of its Trade Secret Information, harm to its goodwill and reputation, and the potential loss of the customer. Plaintiff has no adequate remedy at law for the injuries already suffered, and the additional injuries that are threatened, because it would be impossible to quantify in dollars the losses described above when this matter is finally adjudicated, and Defendant may elect to further engage in its wrongful conduct and Plaintiff will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendant is enjoined from engaging in any further such acts.

47. Although Plaintiff has requested that Defendant cease and desist from the above

referenced conduct and return the Trade Secret Information, Defendant has failed to comply, thus justifying prompt judicial action to protect Plaintiff's legal rights herein, including a temporary, preliminary and permanent injunction.

**SECOND COUNT AND CLAIM FOR RELIEF**
**(Trade Secrets Misappropriation Against All Defendants And Does 1-10**
**in Violation of CUTSA)**

48.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-47 of this Complaint as though fully set forth herein.

49.    For all the same reasons as set forth in paragraphs 36-44 above, Plaintiff's trade secrets are protectable under the California Uniform Trade Secrets Act.

50.    For all the same reasons as set forth in paragraphs 36-44 above, Defendant's conduct constitutes misappropriation of trade secrets under California Civil Code § 3426, *et seq.*

51.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer irreparable injury and damages in an amount to be proven at trial. Plaintiff is entitled to an award of attorneys' fees and costs.

52.    Defendant's actions are in violation of its duties to Plaintiff and have caused and will cause irreparable harm to Plaintiff for which there is no adequate monetary compensation.

53.    As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm, including the risk of further disclosures of the Trade Secret Information, loss of business and contractual relationships, diminished value of its Trade Secret Information, harm to its goodwill and reputation, and the potential loss of the customer.  Plaintiff has no adequate remedy at law for the injuries already suffered, and the additional injuries that are threatened, because it would be impossible to quantify in dollars the losses described above when this matter is finally adjudicated, and Defendant may elect to further engage in its wrongful conduct and Plaintiff will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendant is enjoined from engaging in any further such acts.

54.    Although Plaintiff has requested that Defendant cease and desist from the above

referenced conduct and return the Trade Secret Information, Defendant has failed to comply, thus justifying prompt judicial action to protect Plaintiff's legal rights herein, including a temporary, preliminary and permanent injunction. Accordingly, Plaintiff is entitled to injunctive relief pursuant to California Civil Code § 3426.2.

55. Defendant's misappropriation of Plaintiff's trade secrets was willful and malicious and, accordingly, Plaintiff is entitled to recover its reasonable attorneys' fees and costs pursuant to California Civil Code §§ 3426.3(c) and 3426.4.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, and an order granting the following relief:

1. For the court to issue a temporary, preliminary, and permanent injunction enjoining Defendants, and each of them, from:
    a. Accessing, using and/or disclosing Plaintiff's trade secrets and confidential information;
    b. engaging in any conduct that interferes with Plaintiff's economic relations and/or advantage;
    c. engaging in any conduct that interferes with Plaintiff's contractual relationships;
2. For an order that Defendants, and each of them, not engage in any unfair, unlawful or wrongful conduct;
3. For an order that Defendants, and each of them, turn over to Plaintiff all property and confidential information provided to them under the July 3, 2023 NDA;
4. For an order appointing a referee to conduct an audit of Defendant to ensure they have complied with any and all orders of this Court;
5. For recovery of attorney's fees as provided by law, contract or statute;
6. For cost of suit herein;

7. For interest at the legal rate provided by law; and

8. For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

                                          Respectfully Submitted,
                                          **U.S. Continental Marketing, Inc.**,
                                          By and Through Its Attorneys,
                                          Gordon Rees Scully Mansukhani

Dated: November 16, 2023        By: */s/ JAMES L. SOUCY, ESQUIRE*
                                          James L. Soucy, Esquire
                                          66 Hanover St., Suite 200
                                          Manchester, NH 03101
                                          (959) 333-6016
                                          jsoucy@grsm.com